IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

ROY EDWARD BELL,
Co-Administrator of the
Estate of JEREMY EDWARD BELL,

      Plaintiff,

v.                          CIVIL ACTION NO. 5:03-0334

BOARD OF EDUCATION OF THE COUNTY
OF FAYETTE, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are motions for summary judgment filed by a number of defendants in this case (see Docket Nos. 81, 83, 85, 87, 89). Having reviewed the record and applicable law, for the reasons outlined below, defendants' motions for summary judgment are DENIED. Further, for the reasons outlined below, plaintiff's motion to strike (Docket No. 286) is DENIED.

### I. Factual Background

The factual background to this case is summarized in Judge Haden's opinion regarding defendants' motion to dismiss. See Bell v. Bd. of Educ., 290 F. Supp. 2d 701, 704 (S.D. W. Va. 2003). In that opinion, the court stated that plaintiff, Roy Edward Bell ("Bell"), is the co-administrator of the estate of his minor son Jeremy Edward Bell ("Jeremy"), whom he alleges was killed by defendant Friedrichs on November 8, 1998. According to the Complaint filed April 15, 2003, there were "numerous

incidnets of unlawful assaults upon Jeremy Edward Bell, including, but not limited to, secret druggings, indecent touchings, and sexual molestation, on various dates preceding the date of his death." (Compl. ¶ 1.) Friedrichs was a school teacher and principal employed by defendant Fayette County Board of Education ("Board") and supervised by defendants Cavalier, Edwards, Coleman, Kincaid, and Carson, a well as the Jane and John Doe defendants. According to the Complaint, on January 30, 2002, in the Circuit Court of Fayette County, Friedrichs was convicted of one felony count of first degree sexual abuse and three felony counts of first degree sexual abuse involving sexual abuse by a custodian. These charges involved two former students at Beckwith Elementary School where Friedrichs was the principal. The Complaint alleges the supervising defendants had knowledge that Friedrichs was a pedophile and sexual predator, but failed to take any precautions or actions to protect young male elementary students in the school system and that this conduct constituted a policy, custom, or practice of deliberate indifference to the students' welfare.

According to the Complaint, on November 7, 1997, Jeremy's mother Kimberly Ann Ball entrusted her son to Friedrichs for an overnight camping trip. It is also alleged that "at all times relevant hereto, Friedrichs' contacts, relationships, and/or interations with Jeremy Edward Bell arose from Friedrichs'

-2-

position as a teacher and/or principal within the Fayette County
School system." (Compl. ¶ 12.)  Further, plaintiff alleges
Friedrichs administered amitriptyline and/or chloroform to Jeremy
to render him incapable of resistance and then sexually and
physically assaulted him.  Jeremy died, according to the
Complaint, either as a result of head injuries inflicted by
Friedrichs and/or as the result of the amitriptyline or
chloroform.  This action, filed April 15, 2003, is brought under
42 U.S.C. § 1983.[1]

In their motions for summary judgment, defendants aver that
plaintiff's claims are barred by a two-year statute of
limitations.  Specifically, defendants contend that any evidence
that Roy Bell, as co-administrator of the Estate of Jeremy Bell.
deemed sufficient to institute this civil action against
defendants was known by him prior to April 15, 2001.  (See, e.g.,
Docket No. 82 at 5.)

Defendants note that in a July 22, 2002, deposition, Roy
Bell testified that he and his family hired Daniel Barber, a
private investigator, to investigate Jeremy's death.  (See Bell
Dep., Defs.' Exh. A, at 123:5-10.)  Bell stated that Barber acted
at his direction, and that Bell had "frequent and regular
conversations" with him.  (Id. at 123:11-23.)  During these

---

[1]  Plaintiff's second claim, under Title IX of the Education
Amendments of 1972, as amended, 20 U.S.C. § 1681(a), was
previously dismissed.  See 290 F. Supp. 2d at 706.

conversations, Barber presented Roy Bell with information that he had obtained from witnesses in this matter.  (Id. at 123:22-124:4.)

In their motion for summary judgment, defendants refer to the testimony of a large number of witnesses.  On November 27, 1999, Daniel Barber interviewed Michael Cooley, one of Jeremy Edward Bell's friends, and his mother Myra Cooley.  The notes from this interview indicate that the Cooleys said Friedrichs or Jeremy Bell told Michael Cooley that Friedrichs had been fired from a previous school for talking to, or touching boys, behind closed doors or with the blinds drawn.  (See generally Docket No. 93, Exs. B & C.)  On November 28, 1999, Daniel Barber interviewed Steve Rhodes, a teacher at Beckwith who shared the responsibility of teaching fifth graders – including Jeremy Edward Bell – with Friedrichs.  The interview notes indicate that Kathy Bird said she would call the Board concerning her suspicions that Friedrichs was a pedophile.  (See id., Ex. D.)  On November 29, 1999, Barber interviewed Diane Cottle, the mother of one of Jeremy Bell's friends.  (See id., Ex. E.)  The notes concerning this interview suggest rumors that Friedrichs had previous problems at Falls View Elementary School and in Pennsylvania. (Id.)

On March 11, 2000, Daniel Barber interviewed Jane Carol Skeldon, who was a teacher at Beckwith Elementary School when

-4-

Friedrichs was the principal, and Jeremy Bell was a student there.  (See id., Ex. F.)  On March 13, 2000, Daniel Barber interviewed Kathy Bird, a mother of one of Jeremy Bell's friends.  (See id., Ex. G.)  Barber's notes indicate that she complained to the Board about Friedrichs and that someone there told her that the Board could not control what Friedrichs did after class was out.  (Id.)

On August 19, 2000, Barber interviewed Timothy John Robinson, who was apparently sexually abused by Friedrichs in Pennsylvania before be came to Fayette County.  (Id., Ex. H.)  These notes indicate that in or about 1972, Robinson told the principal of Prospect Park Elementary School and the Superintendent of the Interboro School District in Pennsylvania that Friedrichs had molested him.  (Id.)

On August 22, 2000, Barber interviewed Mr. and Mrs. James Stillman, parents of two male students who were apparently sexually abused by Friedrichs in Pennsylvania before he came to Fayette County.  (See id., Ex. I.)  On November 17, 2000, Barber interviewed Elva Louise Schuler and John Philip Schuler, parents of a male student who was also apparently sexually abused by Friedrichs before Friedrichs came to Fayette County.  (See id., Ex. J.)  The interview notes concerning this couple indicate that they told the principal of Prospect Park Elementary School in Pennsylvania that Friedrichs had molested their son.  (See id.)

On January 5, 2001, Daniel Barber interviewed Norman Harlan, an elected member of the Fayette County School Board. (<u>See</u> <u>id.</u>, Ex. K.) Barber's notes suggest that Harlan received an anonymous phone call while he was on the Board, and that the caller stated that Friedrichs was keeping a male student after school and possibly molesting him. (<u>Id.</u>)

On January 7, 2001, Barber interviewed Carl Moten, a school bus driver. (<u>See</u> <u>id.</u>, Ex. L.) These notes suggest that the Board hired a former Fayette County student's mother to keep Friedrichs' relationship with that student a secret. (<u>Id.</u>) On January 7, 2001, Barber interviewed Delores Webster, a teacher at Powellton Elementary School when Friedrichs was the principal, and the former student who allegedly had a relationship with Friedrichs while the former student was under Friedrichs's supervision. (<u>See</u> <u>id.</u>, Ex. M.) Other notes taken by Barber in January 2000 also suggest that Board officials were aware of Friedrichs' behavior. (<u>See</u> <u>id.</u>, Ex. N & O.)

In a June 24, 2004 deposition, plaintiff testified that Barber had discussed his investigation with him as far back as 1999. (<u>See</u> <u>id.</u>, Ex. P at 81:16-23.) At a February 4, 2002 hearing in the Circuit Court of Fayette County, plaintiff's attorney Margaret Workman stated the following:

> Mr. Armada [a lawyer for plaintiff's former
> wife, also a co-administrator of the estate
> of Jeremy Bell] says now that information has
> only recently come to him that would give him

> the grounds to sue the Fayette County Board
> of Education.  Your Honor, the way that
> information came to Mr. Armada is that I gave
> it to him.  And it's the same information
> that Mr. bell and the investigator that was
> hired by his family have been knocking on the
> door begging them to look at since the death
> of this child.  It's not new information.
> It's old information.  It's information that
> we gathered . . . . Now that . . . we meet
> with him and we give him all the evidence
> we've been trying to give him for two years
> now, now he says all of a sudden he has newly
> discovered evidence.

(See id., Ex. Q at 10:13-22.)

Based on the evidence against Friedrichs available before the April 15, 2001 date, and on the testimony of plaintiff's original lawyer, defendants assert that this case should be dismissed on statute of limitations grounds.  (See Docket No. 82 at 9.)  Further, defendants aver that because plaintiff admits not doing anything from the date of Jeremy Bell's death until April 15, 2001, to determine whether the Board was deliberately indifferent to Friedrichs's relationship with Jeremy Bell or to the risk he posed to the children of Fayette County because plaintiff was on inquiry notice before the April 15, 2001, date, this cause of action should be dismissed.  (Id. at 9-11.)

Defendants also state that the Board of Education did not have any actual or constructive knowledge that Friedrichs was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injuries to male students like Jeremy Bell. (Id. at 12.)  Supporting this notion, defendants provide a number

-7-

of depositions from schools where plaintiff alleges Friedrichs
previously had relationships with students.  (See id., Ex. R &
S.)  Defendants indicate that a meeting which plaintiff asserts
was focused on allegations that Friedrichs had molested a student
actually dealt with routine disputes by teachers over scheduling
and employment matters.  (See id., Ex. T.)

    Defendants have provided testimony and other affidavits
rebutting plaintiff's averments that Board officials had
knowledge of a past inappropriate relationship between Friedrichs
and another student.  However, defendants admit that some
testimony indicates that persons had informed Board officials
that children might be at risk from defendant Friedrichs.  (See
id., Ex. Z.)  Even accounting for the large number of
depositions provided by defendants, some information in the
record supports plaintiff's claims.

## II.  Standard of Review

    Rule 56 of the Federal Rules of Civil Procedure provides
that

> [t]he judgment sought shall be rendered
> forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on
> file, together with the affidavits, if any,
> show that there is no genuine issue as to any
> material fact and that the moving party is
> entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56 (2003).  The moving party has the burden of
establishing that there is no genuine issue as to any material

fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met this burden, the burden then shifts

to the nonmoving party to produce sufficient evidence for a jury

to return a verdict for that party.

> The mere existence of a scintilla of evidence
> in support of the plaintiff's position will
> be insufficient; there must be evidence on
> which the jury could reasonably find for the
> plaintiff.  The judge's inquiry, therefore,
> unavoidably asks whether reasonable jurors
> could find, by a preponderance of the
> evidence, that the plaintiff is entitled to a
> verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If

the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted."  Id. at 250-251.

Significantly, "a party opposing a properly supported motion for

summary judgment may not rest upon mere allegation or denials of

his pleading, but must set forth specific facts showing that

there is a genuine issue for trial."  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 256 (1986).  Finally, "[o]n summary judgment

the inferences to be drawn from the underlying facts . . . must

be viewed in the light most favorable to the party opposing the

motion."  United States v. Diebold, Inc.,   369 U.S. 654, 655

(1962).

### III.  Analysis

Having reviewed all of the materials in the record of this

case, it is clear that defendants' motions for summary judgment

must be denied.[2]  Given the court's review of the record, plaintiff's assertions that he lacked the knowledge to file this action until April 2001 appear likely incredible.  As the court has indicated to the parties, plaintiff has a high hurdle to overcome the statute of limitations issues present in this case. If plaintiff cannot overcome the hurdle posed by the statute of limitations, plaintiff cannot win.  As such, when this case is tried, it is possible that the court will consider bifurcating the trial and hearing testimony on statute of limitations issues before hearing testimony on the remainder of the case.

Should plaintiff be able to overcome the hurdle posed by the statute of limitations, as defendants indicate in their motion for summary judgment and related briefs, there are hurdles to him proving his case on the merits.  That said, given the standard applicable under Rule 56 of the Federal Rules of Civil Procedure, it appears that plaintiff must be given an opportunity to prove his case.  It is more appropriate for a jury to evaluate this case, in the presence of testifying witnesses who have an opportunity to explain themselves, than for the court to evaluate a case such as this on deposition transcripts.  As such, defendants' motions for summary judgment must be denied.

---

[2]  Because the court is denying defendants' motion for summary judgment, the court DENIES AS MOOT plaintiff's motion to strike certain pleadings filed by defendants (Docket No. 286).

### IV.  Conclusion

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record and to any unrepresented parties.

It is SO ORDERED this 1st day of December, 2005.

Enter:

David A. Faber
United States District Judge