IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

**ROY EDWARD BELL,**
**Co-Administrator of the**
**Estate of JEREMY EDWARD BELL,**

    **Plaintiff,**

v.                                           CIVIL ACTION NO. 5:03-0334

**BOARD OF EDUCATION OF THE COUNTY**
**OF FAYETTE, et al.,**

    **Defendants.**

<u>MEMORANDUM OPINION AND ORDER</u>

Pending before the court is plaintiff's "Motion for Judgment After Trial, or in the Alternative, Motion for a New Trial under Rules 50 and 59 of the Federal Rules of Civil Procedure." (Doc. No. 336.) For the reasons outlined below, plaintiff's motion is DENIED.

### I. Background

**A. Allegations Contained in the Complaint**

The factual background to this case is summarized in Judge Haden's opinion regarding defendants' motion to dismiss. <u>See</u> <u>Bell v. Bd. of Educ.</u>, 290 F. Supp. 2d 701, 704 (S.D. W. Va. 2003). In that opinion, the court stated that plaintiff, Roy Edward Bell ("Bell"), is the co-administrator of the estate of his minor son Jeremy Edward Bell ("Jeremy"), whom he alleges was

killed by defendant Friedrichs on November 8, 1997.  According to the Complaint filed April 15, 2003, there were "numerous incidents of unlawful assaults upon Jeremy Edward Bell, including, but not limited to, secret druggings, indecent touchings, and sexual molestation, on various dates preceding the date of his death."  (Compl. ¶ 1.)  Friedrichs was a school teacher and principal employed by defendant Fayette County Board of Education ("Board") and supervised by defendants Cavalier, Edwards, Coleman, Kincaid, and Carson, a well as the Jane and John Doe defendants.  According to the Complaint, on January 30, 2002, in the Circuit Court of Fayette County, Friedrichs was convicted of one felony count of first degree sexual abuse and three felony counts of first degree sexual abuse involving sexual abuse by a custodian.  These charges involved two former students at Beckwith Elementary School where Friedrichs was the principal.  The Complaint alleges the supervising defendants had knowledge that Friedrichs was a pedophile and sexual predator, but failed to take any precautions or actions to protect young male elementary students in the school system and that this conduct constituted a policy, custom, or practice of deliberate indifference to the students' welfare.

According to the Complaint, on November 7, 1997, Jeremy's mother Kimberly Ann Ball entrusted her son to Friedrichs for an overnight camping trip.  It is also alleged that "at all times

relevant hereto, Friedrichs' contacts, relationships, and/or interactions with Jeremy Edward Bell arose from Friedrichs' position as a teacher and/or principal within the Fayette County School system." (Compl. ¶ 12.) Further, plaintiff alleges Friedrichs administered amitriptyline and/or chloroform to Jeremy to render him incapable of resistance and then sexually and physically assaulted him. Jeremy died, according to the Complaint, either as a result of head injuries inflicted by Friedrichs and/or as the result of the amitriptyline or chloroform. This action, filed April 15, 2003, is brought under 42 U.S.C. § 1983.

### B. Procedural Background and History

As this case proceeded through discovery and pleadings, it became clear that plaintiff's case had significant issues with the statute of limitations. (See Doc. No. 288 at 10.) Plaintiff claimed that the case accrued on April 15, 2001, when he met with the private investigator Daniel Barber, and he filed this action on April 15, 2003, two years to the day after the claim accrued. Adding to this, Jeremy Bell died on November, 1997, and plaintiff Roy Bell admitted in a number of depositions that he did not himself conduct any investigation between the time of his son's death and Barber's April 15, 2001 revelations to him.

In their integrated pretrial order, the parties suggested that it would require in the neighborhood of sixty witnesses and

two to three weeks of court time to hear this case in its entirety.  Given that all of this time and testimony would be for naught if the case was barred by the statute of limitations, the court granted defendants' motion to bifurcate the statute of limitations issue from the remainder of the case and ordered that a separate trial be held on this issue before trial.  (See Doc. No. 298.)

After the court granted this motion, the court held a pretrial conference at which it informed plaintiff that although he would initially be granted the opportunity to call two witnesses, plaintiff Roy Bell and his ex-wife and Co-Administrator of his son's estate, Kimberly Ball, he would later have the opportunity to argue that other witnesses were needed to provide testimony relevant to the statute of limitations issue present in this case.

At trial, plaintiff chose only to present the testimony of Roy Bell.  Bell was allowed to testify broadly: for the purposes of the statute of limitations portion of trial, he was entitled to testify as to the timing of his investigation and as to the specifics of what he learned from other people.  On the whole, he testified that from the time of his son's 1997 death until April 15, 2001, he conducted no investigation whatsoever into the particulars of his son's relationship with Edgar W. Friedrichs, Jr.  A second witness offered by plaintiff, defendant L.A.

Coleman, testified briefly and stated that, in response to inquiries from the press after Jeremy Bell's death, he advised school employees not to comment to the press when they lacked knowledge as to what happened.

After closing arguments, the court directed the jurors to answer the following interrogatory:

> Did the administrator of Jeremy Bell's estate, either Kimberly Ball and/or Roy Bell, have direct or inquiry notice of this cause of action as defined in the jury instructions, before April 15, 2001?

(See Doc. No. 335.)

After deliberation, the jurors answered this interrogatory in the affirmative. Because this question was answered in the affirmative, the court found that plaintiff's claim was barred by the applicable statute of limitations. (See Doc. No. 327 at 1-2.) As such, the court dismissed this case. Plaintiff then filed his motion seeking judgment notwithstanding the jury's verdict or a new trial. (See Doc. No. 336.)

## II. Motion for Judgment After Trial

Under Fourth Circuit law, "[a] district court should grant a Rule 50(b) motion only if the court 'determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings.'" South Atl. Ltd. P'ship of Tenn. v. Riese, 284 F.3d 518, 532 (4th

5

Cir. 2002). "A court may grant [a Rule 50(b)] motion only "if, viewing the evidence in the light most favorable to the non-moving party and drawing every legitimate inference in that party's favor," it determines that "the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party." Figg v. Schroeder, 312 F.3d 625, 635 (4th Cir. 2002).

At the close of evidence, plaintiff moved the court for a directed verdict in his favor on the ground that defendants had failed, as a matter of law, to establish that the cause of action in the case had accrued prior to April 15, 2001. The court denied this motion. Plaintiff contends that submission of this case to the jury after denying plaintiff's motion constituted error because the burden of proof in proving that the cause of action accrued before this date rested with defendants, and defendants failed to meet this burden. (See Doc. No. 337 at 2.)

Defendants contend that plaintiff misstates the evidence presented at trial. (See Doc. No. 338 at 5-7.) Specifically, defendants state that Bell's assertions that he had suspicions from "day one" that his son's relationship was improper support the jury's verdict, as do Bell's statements that had repeatedly stressed to Kimberly Ball, his ex-wife, when she was the sole administrator of their son's estate, that she needed to sue the Board of Education. (See id. at 6.) Further, defendants note

6

that the circumstances surrounding Barber's investigation beginning in 1999, although first funded by plaintiff's cousin Elsie Deal, present great support for the jury's verdict. (See id. at 8-9.)

Plaintiff's position regarding this motion is wrong. First, it is clear that the evidence presented in this case must be viewed in the manner most favorable to defendants. See Burcham v. J.P. Stevens & Co., 209 F.2d 35, 38 (4th Cir. 1954). Second, in answering the interrogatory in the fashion that they did, the jury believed the cause of action accrued prior to Daniel Barber's April 15, 2001 revelations to Roy Bell. Although plaintiff indicates that the record includes no evidence that the cause of action accrued before this date, there was testimony in the record that Daniel Barber tried to pass information to Kim Ball before plaintiff in this action became co-administrator.

Bell's testimony as to the time line of Barber's investigation, regardless of what Barber's relationship to Roy Bell was, provides support for the notion that had either administrator of Jeremy Bell's estate chosen to look into Edgar Friedrichs's background, they could have found much of the information that plaintiff had at the time the trial occurred. Roy Bell chose not to conduct any investigation into the circumstances surrounding his son's relationship with Edgar Friedrichs until, to believe his story, an investigator he had no

7

relationship with told him of almost every detail necessary to prosecute this cause of action on April 15, 2001. Even though Kimberly Ball was told of Barber's investigation prior to this date, she chose not to inquire further into this cause of action. All of this information comes from plaintiff's own testimony: although defendant may bear the burden of proof at this stage of litigation, this testimony was unopposed.

Having heard Roy Bell's testimony, the events leading up to this lawsuit are relatively clear. Roy Bell wanted his ex-wife, the then administrator of his son's estate, to sue parties related to the Fayette County Board of Education. At some point in 1999, Daniel Barber began investigating Edgar W. Friedrichs's background, and discovered that he had a history of abusing males of approximately eleven years of age. Plaintiff here claims that Daniel Barber tried to communicate this information to his ex-wife; she chose not to pursue this theory. Nothing about the factual background as presented in trial indicates that the jury's answer to the interrogatory barring this cause of action was improper.

Plaintiff's position also requires the jury also not count this prior notice at all toward the two year statute of limitations which appears to have run between the time he learned of this cause of action and the time he brought suit in this case. Short of applying some bizarre tolling rule because

plaintiff was not, for the full period, the legal administrator of his son's estate, there is no way plaintiff could win. Plaintiff admitted that even though he suspected Friedrichs' relationship with his son was improper and that the Board of Education was somehow responsible for the harm to his son, neither he, nor his ex-wife, conducted any investigation into whether a cause of action such as the one presented in this case against the Board existed. The cause of action was certainly discoverable because Dan Barber's investigation dug up much of the information plaintiff wanted to present in his case in chief in 1999 and 2000.

The jury's verdict seems to the court to be the only possible outcome given the facts testified to at trial. Given these facts, the court believes the jury's verdict was proper. As such, plaintiff's motion for judgment under Rule 50(b) of the Federal Rules of Civil Procedure is denied.

### III. Motion for a New Trial

The Fourth Circuit recognizes three grounds for granting a Rule 59 motion for a new trial: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct clear error of law or prevent manifest injustice." See EEOC v. Lockheed Martin Corp., 116 F.3d 110, 112 (4th Cir. 1997).

9

Here, plaintiff argues that the court should order a new trial on the grounds that the court prevented plaintiff from presenting evidence as to ongoing "fraudulent concealment." (See Doc. No. 337 at 8.) This concealment includes "evidence that the Fayette County Prosecutor, also the School Board's statutory solicitor, misrepresented to the parents of Jeremy Bell the information that he had in his possession or control and that such misrepresentations continued long after April 15, 2001." Plaintiff alleges that the "cover-up" continued long after the filing of the instant case, and that this information prejudiced his ability to present his case at trial.

Plaintiff's argument centers around the third factor presented in the Lockheed Martin case: to correct clear error of law or prevent manifest injustice. Plaintiff, throughout the whole of this litigation has made clear that he believed he needed to present his evidence in this case at one time. Plaintiff opposed defendants' motion to bifurcate on this ground even though it was based, in part, on an integrated pretrial order to which he had previously agreed. Plaintiff wanted to present up to sixty witnesses in order to establish that he had acted in a timely fashion in filing this suit. He wanted to present evidence that defendants had effectuated a coverup after the time he filed this lawsuit even after admitting that his

source of evidence had acquired it more than two years before this suit was initiated.

In no sense did the court prevent plaintiff from presenting any evidence that was relevant to the first phase of a bifurcated trial. Under Rule 42(b) of the Federal Rules of Civil Procedure, this court had the discretion to order separate trials on issues where doing so would allow for more efficient resolution of this case. In this case, bifurcation allowed for the court to hear testimony from two witnesses as opposed to the sixty plaintiff wished to present. Although the court gave plaintiff an opportunity to argue for the ability to present more witnesses, plaintiff provided no compelling arguments as to why he should be permitted to do so. As this is the case, plaintiff cannot show that it would be manifestly unjust to deny him a new trial. As such, plaintiff's motion for a new trial is denied.

## IV. Conclusion

For the foregoing reasons, plaintiff's "Motion for Judgment After Trial, or in the Alternative, Motion for a New Trial under Rules 50 and 59 of the Federal Rules of Civil Procedure" is denied.

The Clerk is directed to send copies of this Order to all counsel of record and to any unrepresented parties.

It is **SO ORDERED** this 1st day of March, 2006.

Enter:

*David A. Faber*
David A. Faber
Chief Judge